NEW JERSEY DEPARTMENT OF LABOR,
WORKMEN'S COMPENSATION BUREAU.

BANNE SCHANERMAN. PETITIONER, v. LINCOLN MORTGAGE COMPANY, RESPONDENT.

Decided November 27, 1940.

For the petitioner, *Philip G. Schanerman.*

For the respondent, *Cox & Walburg* (by *Arthur F. Mead*).

\*      \*      \*      \*      \*      \*      \*

The petitioner testified with respect to the occurrence of an accident on February 29th, 1940, when he claims he fell over some tools while he was engaged in repairing some plaster following certain plumbing operations on premises at 51 Willoughby street in Newark. He stated that he had been employed by the Lincoln Mortgage Company to do incidental repair work and also to collect rents and was paid $10 a week for doing this work. He conceded that the original arrangement between himself and the respondent came about originally under an agreement made in about 1932 when the Lincoln Title and Mortgage Guaranty Company under threatened foreclosure proceedings took over the property involved as mortgagee in possession. At that time he was to receive $12.50 a week but it later dropped to $10 a week. He stated that no other arrangement was made thereafter. He stated that the rents which he collected were placed into a special account in a local bank and from that account was taken the normal operating expenses of the building involving repairs, gas and electric, taxes and so forth as well as his $10 a week. He conceded that any checks drawn against this special account were signed by himself and the Lincoln Mortgage Company. He testified that following the accident he endeavored to treat his disabled knee himself but finally sought the services of a doctor on March 17th. The doctor relieved the condition of his knee but not completely.

\*      \*      \*      \*      \*      \*      \*

On behalf of the respondent Jerome C. Eisenberg, a counselor-at-law, testified concerning the ownership, operation and management of the premises at 51 Willoughby street, Newark. From his testimony it appears that the petitioner owned the property from November 29th, 1926, to April 4th, 1930, and also from October 31st, 1932, to May 1st, 1940, at which time any and all interest of the Lincoln Mortgage Company or its predecessors ceased. Originally the Lincoln Title and Mortgage Guaranty Company held a mortgage on

the premises, instituted foreclosure proceedings which were stayed and an agreement entered into with Mr. Schanerman, the petitioner, with respect to possession, operation and management of the property, Mr. Schanerman desiring to retain what equity he thought he had in the property by managing the property as economically as possible and by retaining as many tenants as possible. Details of the arrangements between the parties included a deposit of all moneys collected in a special account in the National State Bank of Newark in the joint name of Arthur T. Vanderbilt trustee and Mr. Schanerman. From this account was drawn by check signed by both of the parties, moneys for the payment of normal operating expenses. It was further agreed that Mr. Schanerman was to receive a check weekly in the sum of $12.50 for his services as rent collector and that he was also to make minor repairs at his own cost and expense. The witness referred to notes which he had made at the time and stated that Mr. Schanerman had mentioned an arrangement which he had in connection with other property whereby he was allowed to draw a small amount of money each week as an income. He stated that as far as he knew there was no employment of the petitioner by the original mortgagee and he did know that no other change was made in the arrangements when the trustee was discharged and the Lincoln Mortgage Company took over the property following the discharge of Arthur T. Vanderbilt as trustee.

Mr. Brown, former auditor and treasurer of the Lincoln Mortgage Company, testified with respect to the operation of the joint account at the National State Bank of Newark. He further testified that Mr. Schanerman took care of all minor and small repairs on the premises and only discussed with him major expenditures for repairs, alterations and so forth. He stated that there was a janitor, Mr. Schappel, on the premises and that Mr. Schanerman, rendered bills at the end of each month for supplies, the janitor's pay, his own $10 a week and issued a check in payment of these items which check the Lincoln Mortgage Company countersigned if approved. Mr. Brown also presented the insurance policy and stated that it was in the name of Banne Schanerman and the Lincoln Mortgage Company as partners.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

The situation here presented is one which classifies itself when one considers the negotiations between the petitioner and the Lincoln Mortgage and Title Guaranty Company, then Arthur T. Vanderbilt as trustee for that company and finally the present respondent, Lincoln Mortgage Company. It appears that the only arrangement entered into between the parties was the original arrangement made between the parties when Arthur T. Vanderbilt was trustee for the mortgagee. The crux of the situation is found in the fact that a joint account was opened specially in a local bank which account was used as a depository for the income collected for the operation of the property and out of which account went payment of normal operating expenses of the building. This account was in the name of both the petitioner and the respondent and in order to draw money from this account both parties signed and countersigned the checks. It appears further from the testimony that the petitioner was very much interested in preserving and probably increasing any interest or equity which he had in the property and to that end took care of the actual management, repairs, maintenance and so forth of the property as economically as possible to the extent of doing some of the minor repair work himself.

I am satisfied that the $10 a week which he received was not in the nature of wages or remuneration for actual repair work done by him and that the relationship of master and servant did not exist between the parties. The respondent has contended that the relationship was that of partners. I am further satisfied that they are not partners as defined under Uniform Partnership act of this state. In my opinion and I find as a fact that the parties were engaged in an enterprise for the economical management of the property in question which constituted a joint venture and that they were joint co-enterprisers.

It is, therefore, \* \* \* ordered, that the petition herein be dismissed and judgment be entered in favor of the named respondent.

JOHN C. WEGNER,
*Deputy Commissioner.*